UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

STEVE W. HARP and TERESA E. HARP,

Debtors.

Case No. A10-00021-DMD

Chapter 13

**Filed On 6/23/10**

## MEMORANDUM REGARDING TANNER CLAIMS

A hearing on the debtors' objections to the claims of Jesse Tanner and Tanner's motion for allowance and payment of administrative expenses was held on June 16, 2010. I will allow Tanner an administrative claim in the sum of $4,339.96 and a general unsecured claim of $2,431.90.

Jesse Tanner leased a home at 6850 W. Sunset in Wasilla to the debtors. The original lease on the home named Tanner, individually, as the landlord. Tanner subsequently incorporated his holdings into an entity called Frontier Dreams, LLC. A second lease between Tanner and the debtors was signed after this occurred. The lease was identical in all respects, except that the landlord was now Frontier Dreams, LLC. The lease was for a three-year term, expiring on June 1, 2010, and called for rental payments of $1,600.00 per month. Although both the original and the Frontier Dreams, LLC, lease documents contained a "move-in check list," the list was not completed on either document. Further, the Frontier Dreams, LLC, lease was signed by the parties, but undated.[1] The debtors paid

---

[1] Tanner's Ex. B.

a $1,600.00 security deposit to Tanner, which he still retained at the time this bankruptcy case was filed.

The debtors apparently made their rent payments on time until January of 2010. They filed for chapter 13 relief on January 19, 2010. On January 22, 2010, they submitted a rental payment of $1,100.00 to Tanner. Tanner gave them a receipt bearing the same date which stated, "January Rent paid in the amount of $1,100.00. Jesse Tanner & Steve Harp agree to meet prior to January 29th to discuss the terms of the February rent."[2] No agreement regarding the February rent was reached, however, and the debtors continued to reside in the home without paying rent of any kind.

On February 3, 2010, the debtors filed their first chapter 13 plan.[3] The plan provided that their lease with Jesse Tanner would be rejected. A first amended chapter 13 plan, filed on February 22, 2010, also provided for rejection of the lease.[4] On February 24, 2010, the debtors' attorney, Louis Breuer, sent a notice of the confirmation hearing and a proof of claim form to Tanner under cover of a letter in which Breuer wrote, "As I indicated, you should talk with your attorney, but your claim can be treated as an administrative claim in this case and will be, therefore, eligible to be paid right near the top of the list."[5]

A hearing on the debtors' first amended plan was held on March 23, 2010. Richard Deuser appeared telephonically for Jesse Tanner. Deuser made an oral request for

---

[2] Debtors' Ex. 1.

[3] Ch. 13 Plan, filed Feb. 3, 2010 (Docket No. 21).

[4] First Amended Ch. 13 Plan, filed Feb. 22, 2010 (Docket No. 24).

[5] Tanner's Ex. C.

2

relief from stay. I advised him to file a motion for relief from stay and an administrative claim. Breuer, the debtors' attorney, stated that Tanner's interest in rents would be adequately protected by an administrative claim. I delayed ruling on confirmation of the plan until the issue of Tanner's administrative claim was resolved.

On March 31, 2010, Deuser filed a motion for allowance and payment of an administrative claim and a motion for relief from stay. Tanner claimed he was entitled to an administrative expense claim of $5,300.00, representing unpaid rent through April, 2010.[6] The motion also contended that rent for May, in the sum of $1,600.00, would also become an administrative expense unless the debtors' plan was confirmed before the date the rental payment was due.[7] Tanner also filed a proof of claim which contended the debtors' monthly post-petition rental payments of $1,600.00 were entitled to priority treatment.[8]

The debtors vacated the leased premises on April 12, 2010. Tanner filed an amended claim on May 25, 2010, which sought recovery not only of the unpaid rent, through May, 2010, but also damage claims totaling $2,521.49.[9] After crediting the debtors' security deposit of $1,600.00 against the amounts due, Tanner seeks allowance of an administrative

---

[6] Tanner's Mot. for Allowance and Payment of Administrative Expense, filed Mar. 31. 2010 (Docket No. 46), at 2.

[7] *Id.*

[8] Proof of Claim No. 12, filed Mar. 31, 2010.

[9] Proof of Claim No. 13-2, filed May 25, 2010, at 3.

3

expense claim totaling $7,921.49.[10] The debtors object to Tanner's claim to the extent that he seeks more than $3,734.50 as an administrative expense.[11]

Administrative expenses are "the actual, necessary costs and expenses of preserving the estate."[12] Unpaid post-petition rents can be administrative expenses. As noted by Collier:

> If a trustee fails to pay rent or perform other obligations under a lease not governed by section 365(d)(3) or section 365(d)(5), the general rule regarding the amount of an administrative claim arising from the trustee's use of another entity's property is the amount of the benefit that accrued to the estate as a result of the estate's use of the property. The measure of the benefit to the estate is typically the reasonable rental value of the property that was occupied or used by the trustee. Using reasonable rental value allows the court to apply an objective standard in determining the benefit to the estate. To use a different standard, such as the extent to which use of the property benefitted the estate, would be too subjective and would lead to different outcomes dependent on the success of the trustee's operation of the business.
>
> In determining a reasonable rental value, the amount set forth in the contract or lease will constitute a rebuttable presumption that such amount is the correct measure of reasonable rental value. The presumption, however, can be

---

[10] *Id.*

[11] Debtors' Obj. to Mot. of Tanner for Allowance and Payment of Administrative Expense, filed Apr. 20, 2010 (Docket No. 42).

[12] 11 U.S.C. § 503(b)(1)(A).

4

overcome by the introduction of evidence as to the actual rental value.[13]

Here, the first issue to be determined is the amount of rent, if any, due for January, 2010. The lease called for rent payments of $1,600.00 per month. There was no evidence presented that the actual rental value for the premises differed from that imposed by the lease. The debtors paid $1,100.00 to Tanner on January 22, 2010. They claim that Tanner agreed to a reduced rental amount for January. Tanner disagrees and states he never agreed to such a reduction. The receipt Tanner gave the debtors when they made their $1,100.00 payment is silent on the issue. I conclude the rent for January was $1,600.00. Tanner did not indicate in writing that the debtors' January 2010 rent was paid in full. Moreover, there was no consideration for the debtors' unilateral reduction in rents.[14] Their payment of $1,100.00 covered rent through the date they filed their bankruptcy petition, January 19, 2010. The debtors did not vacate the premises at that time. Tanner has an administrative claim for $500 in unpaid rent for January.

The debtors remained on the premises for all of February and March. They departed on April 12, 2010. Rents for February and March total $3,200.00. Pro-rata rent for April is the sum of $639.96. The amount of rent entitled to administrative expense priority totals $4,339.96. Rents for the remainder of April and all of May are not recoverable as an

---

[13] 4 *Collier on Bankruptcy* ¶ 503.06[6][c][ii] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnotes omitted).

[14] It has long been established that partial payment of an undisputed, mature debt will not release the obligation unless new consideration is provided. *United States v. Bostwick*, 94 U.S. 53, 67 (1876) [a payment of $250.00, where the rental agreement provided for monthly rent payments of $500.00, did not satisfy the rental obligation absent new consideration]; *see also Chicago, Milwaukee & St. Paul R.R. Co. v. Clark*, 178 U.S. 353, 365 (1900); *Foakes v. Beer*, L. R. 9 App. Cas. 605, 621 (1884); 3 *Williston on Contracts* § 7:26 (4th ed. 2010), *available at* Westlaw WILLSTN-CN § 7:26.

5

administrative expense, however. Because the debtors were no longer residing on the property, these rents do not confer any benefit to the estate.[15] They are allowable as a general unsecured claim.

Tanner claims an additional $2,521.49 for alleged damages incurred to the property. These charges are itemized in Tanner's Exhibit F. They range from changing a lock for $34.69 to carpet replacement and cleaning at a cost of $862.44. They also include the $150.00 fee Tanner paid for filing his motion for relief from stay. The debtors contest the items of damage claimed by Tanner. I find that these damage claims did not confer any benefit to the estate. They are not entitled to administrative expense status, but they can be set-off against the security deposit.[16] Moreover, a number of the charges would not be recoverable by Tanner under state law. Additionally, at the inception of the lease, Tanner did not prepare a premises condition statement, as provided for under Alaska Stat. § 34.03.020(e). Such a statement would have given Tanner an evidentiary presumption of the condition of the home at the commencement of the lease term pursuant to Alaska Stat. § 34.03.335. I will allow damages in the following amounts:

| | |
|---|---|
| Cabinet Repair in Kitchen | $     0.00 |
| Electrical repairs 2 hours | $   40.00 |
| Materials | $   20.00 |
| Cleaning Labor | $ 100.00 |
| Trash Removal | $   20.00 |
| Lock Change | $   34.69 |
| Enstar | $ 137.76 |
| MEA | $   31.97 |
| Removal of Abandoned Truck | $ 150.00 |

---

[15] *In re Johnston, Inc.*, 164 B.R. 551, 554-55 (Bankr. E.D. Tex. 1994).

[16] Alaska Stat. § 34.03.070(b).

6

|  |  |
|---|---|
| Screen and Screen Door replacement | $     0.00 |
| Carpet Replacement/Cleaning | $ 862.44 |
| Drywall Repairs | $   75.00 |
| Repair/Replace Poly | $     0.00 |
| Repaint Exterior Door Trim | $     0.00 |
| Court Fees | $     0.00 |
| Total | $1,471.86. |

After applying the $1,600.00 security deposit against this total, the debtors have a credit of $128.14 can be applied to Tanner's claim for the rent which accrued after April 12, 2010, when the debtors vacated the premises.

Summarizing my conclusions, Jesse Tanner has an administrative expense claim for $4,339.96. His claim for administrative expenses and motion for allowance is granted in that sum. Additionally, Tanner has a general unsecured claim for rent accruing from April 13 through May 31, 2010, less the security deposit credit of $128.14. That sum is $2,431.90.

An order and judgment will be entered consistent with this memorandum.

DATED: June 23, 2010.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:    L. Breuer, Esq.
         R. Deuser, Esq.
         L. Compton, Trustee
         U. S. Trustee

         06/23/10

7